UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CHERELLE FLETCHER**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Case No.: 5:21-cv-1432-LCB |
| | ) |
| **CITY OF MADISON**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## OPINION & ORDER

On October 27, 2019, in the parking lot of a shopping center in Madison, Alabama, the Fletcher family had an altercation with police officers that, tragically, ended with the death of the father, Dana Fletcher. Fletcher's wife, Cherelle, and his minor daughter, V.F., have brought this action against the City of Madison; the mayor of Madison, Paul Finley; the former chief of the Madison Police Department, David Jernigan; seven Madison City Councilmembers;[1] and five police officers.[2] (Doc. 58 at 1−7.)

Defendants' Motions to Dismiss (Docs. 60 and 62) and Plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. 65) are now before the Court. After Plaintiffs filed their initial Complaint (Doc. 1), Defendants filed Motions to Dismiss

---

[1] These individuals are Maura Wroblewski, Steve Smith, Teddy Powell, Greg Shaw, Tommy Overcash, Gerald Clark, and John Seifert (collectively, "the Councilmembers").
[2] Plaintiffs identify the police officers as John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Jane Doe 5.

(Docs. 11 and 13), arguing, among other things, that Plaintiffs had filed a shotgun pleading. Plaintiffs then filed their First Amended Complaint (Doc. 19), before the Court ruled on Defendants' Motions. The Court then dismissed Plaintiffs' First Amended Complaint as a shotgun pleading and instructed Plaintiffs to ensure their Second Amended Complaint satisfied the pleading standards of the Federal Rules of Civil Procedure. For the reasons below, the Court finds that Plaintiffs failed to do so and that it would be futile to allow them to file a Third Amended Complaint. The Court thus **GRANTS** Defendants' Motions to Dismiss (Docs. 60 and 62), **DENIES** Plaintiffs' Motion (Doc. 65), and **DISMISSES** Plaintiffs' Second Amended Complaint (Doc. 58).

I.   BACKGROUND

The Court pulls the following facts from Plaintiffs' Second Amended Complaint. (Doc. 58.) At this stage in the litigation, the district court must accept a complaint's factual assertions as true and construe those assertions in the light most favorable to the plaintiff. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Plaintiffs' Second Amended Complaint alleges it was late afternoon on October 27, 2019, when Cherelle Fletcher was working out at the Planet Fitness located at 8050 Hwy 72 W, Madison, Alabama 35738. (Doc. 58 at 7.) Her vehicle was parked in the lot, and her husband, Dana Fletcher, was sitting in the passenger

seat, and their eight-year-old daughter, V.F., was seated behind him. (Doc. 58 at 7.) Fletcher and V.F. were waiting on Cherelle, so Fletcher had his door open to allow for air circulation. (Doc. 58 at 7.)

After Cherelle finished her workout, she walked across the parking lot and climbed into the driver's seat of the vehicle. (Doc. 58 at 8.) Shortly thereafter, a Madison Police Department ("MPD") patrol car pulled up. (Doc. 58 at 8.) At the time, the Fletcher family was still just sitting in the vehicle. (Doc. 58 at 8.) A police officer ("Officer 1") exited the patrol car and approached the vehicle, walking to the passenger side. (Doc. 58 at 8.) It was approximately 4:43 P.M. (Doc. 58 at 9.) Fletcher ignored Officer 1's presence. (Doc. 58 at 9.) Cherelle asked Officer 1 to come talk to her, but he refused to do so. (Doc. 58 at 9.) Officer 1 appeared to be angry, and around 4:44 P.M., he grabbed Fletcher's arm. (Doc. 58 at 10.) Officer 1 then radioed for backup. (Doc. 58 at 10.) At that time, after telling Officer 1 that he had done nothing wrong, Fletcher tried to ask Officer 1 why Officer 1 was there. (Doc. 58 at 10.) Officer 1 did not supply an explanation, and he then drew his firearm and aimed it at Fletcher's head. (Doc. 58 at 10.) V.F. saw this and began screaming hysterically. (Doc. 58 at 10.)

According to Plaintiffs' Second Amended Complaint, at approximately 4:47 P.M., a second police officer arrived on the scene ("Officer 2"). (Doc. 58 at 11.) He approached the vehicle with his firearm drawn. (Doc. 58 at 11.) Cherelle became

frightened, so she locked her door. (Doc. 58 at 11.) Officer 2 aimed his firearm at Cherelle's head, yelling at her to open the door. (Doc. 58 at 11.) Officer 1 yelled at Cherelle to keep her hands up and visible to him. (Doc. 58 at 11.)

A minute later, three more police officers showed up ("Officer 3," "Officer 4," and "Officer 5"). (Doc. 58 at 11.) Officer 3 brought a K-9 Officer. (Doc. 58 at 11.) Though no Officer gave a reason for his/her presence, the Officers began ordering Fletcher out of the vehicle. (Doc. 58 at 12.) Officer 3 commanded the K-9 Officer to attack Fletcher while he was still seated in the vehicle. (Doc. 58 at 12.) The K-9 Officer began mauling and biting Fletcher, who tried to restrain and hold off the dog. (Doc. 58 at 12.) Officer 3 then pulled back the K-9 Officer and began personally beating Fletcher. (Doc. 58 at 12.) Simultaneously, Officer 2 smashed the driver side window, unlocked the door, and yanked Cherelle and V.F. out of the vehicle and onto the pavement with the broken glass, injuring them in the process. (Doc. 58 at 12.)

Plaintiffs allege that Officer 1 then moved to the driver side and used a Taser on Fletcher, incapacitating him. (Doc. 58 at 12.) As Fletcher fell to the ground, Officer 3 discharged his firearm. (Doc. 58 at 13.) One or more bullets hit Fletcher. (Doc. 58 at 13.) Fletcher moaned and clutched himself with his right arm. (Doc. 58 at 13.) Officer 4 then aimed his firearm at Fletcher and discharged it. (Doc. 58 at

13.) Following the shots, none of the Officers rendered aid to Fletcher, and he died on the scene. (Doc. 58 at 13−14.)

The Officers then seized Cherelle's vehicle and took her cell phone. (Doc. 58 at 14.) They also threatened to take Cherelle to an undisclosed location. (Doc. 58 at 14.)

On October 26, 2021, Plaintiffs filed their Complaint in this Court. (Doc. 1.) On November 23, 2021, Defendants filed Motions to Dismiss, arguing, in part, that Plaintiffs' Complaint was a shotgun pleading. (Docs. 11 and 13). On December 14, 2021, Plaintiffs filed their First Amended Complaint. (Doc. 19.) On April 14, 2022, the Court granted Plaintiffs leave to file a Second Amended Complaint, informing them that they needed to correct their shotgun pleading deficiencies. (Doc. 57.) On April 29, 2022, Plaintiffs filed their Second Amended Complaint. (Doc. 58.) The Second Amended Complaint is fifty-three pages long, and Plaintiffs bring twenty-four counts:

> Count 1. Declaratory Judgment that Defendants' Invocation of the Eleventh Circuit's Formulation of Qualified Immunity is Unconstitutional as Applied to this Case;
> Count 2. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure at 4:44 P.M. against Officer 1;
> Count 3. Plaintiffs Cherelle and V.F. bring a 42 U.S.C. § 1983 claim of unlawful seizure at 4:44 P.M. against Officer 1;
> Count 4. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure at 4:44-4:47 P.M. against Officer 1;
> Count 5. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure at 4:44-4:47 P.M. against Officer 1;

Count 6. Plaintiffs Cherelle and V.F. bring a 42 U.S.C. § 1983 claim of unlawful seizure at 4:44-4:47 P.M. against Officer 1;

Count 7. Plaintiffs Cherelle and V.F. bring a 42 U.S.C. § 1983 claim of unlawful seizure at 4:47 P.M. against Officers 1 and 2;

Count 8. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure against Officers 1 and 3;

Count 9. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure at 4:49 P.M. against Officer 1;

Count 10. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful seizure against Officers 1 and 4;

Count 11. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of excessive force against Officers 1, 3, and 4;

Count 12. Plaintiffs Cherelle and V.F. bring a 42 U.S.C. § 1983 claim of excessive force against Officer 2;

Count 13. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of failure to protect against Officers 2, 3, 4, and 5;

Count 14. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of failure to protect against Officers 1, 2, 4, and 5;

Count 15. Plaintiff Estate brings a 42 U.S.C. § 1983 claim of failure to protect against Officers 1, 2, 4, and 5;

Count 16. Plaintiffs Cherelle and V.F. bring a 42 U.S.C. § 1983 claim of unlawful detention and false imprisonment against Officers 1, 2, 3, 4, and 5;

Count 17. Plaintiff Estate brings an Alabama wrongful death claim against Officers 1, 3, and 4;

Count 18. All Plaintiffs bring a 42 U.S.C. § 1983 municipal liability claim against City of Madison;

Count 19. All Plaintiffs bring an Alabama outrage/intentional infliction of emotional distress claim against Officers 1, 2, 3, 4, and 5;

Count 20. Plaintiff Estate brings an Alabama assault and battery claim against Officers 1, 3, and 4;

Count 21. Plaintiffs Cherelle and V.F. bring Alabama assault and battery claims against Officers 1 and 2;

Count 22. Plaintiffs Cherelle and V.F. bring Alabama false arrest/false imprisonment claims against Officers 1, 2, 3, 4, and 5;

Count 23. All Plaintiffs bring an Alabama municipal liability claim against the City of Madison; and

Count 24. All Plaintiffs bring a claim under 42 U.S.C. § 1988 for attorney's fees.

(Doc. 58 at 25−52.)³ Defendants City of Madison, Finley, Jernigan, and the Councilmembers filed Motions to Dismiss, reraising the argument that Plaintiffs filed a shotgun pleading. (Doc. 60 and Doc. 62). Following those Motions, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint (Doc. 65).

## II.  LEGAL STANDARDS

Rule 8 of the Federal Rules of Civil Procedure establishes the general standard for pleading civil claims in federal court. *E.g.*, *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). The Rule requires that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not demand "detailed factual allegations," but it does require something beyond "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 10(b) further requires that a plaintiff "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

Rule 12(b)(6) provides that a party may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as

---

³ Plaintiffs do not bring any claims against Defendants Finley, Jernigan, or the Councilmembers.

true, to assert a facially plausible claim for relief. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). A claim is facially plausible when it raises "'a reasonable expectation that discovery will reveal evidence of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). Allegations "merely consistent" with a defendant's liability are insufficient to push "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557, 570. When reviewing a motion to dismiss, the district court accepts a complaint's factual assertions as true and construes those assertions in the light most favorable to the pleader. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

### III. DISCUSSION

#### A. Shotgun Pleading

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit in *Weiland* stated:

> The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and at trial, the court can determine that evidence which is relevant and that which is not.

8

*Id.* (internal citation omitted). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), and district courts may dismiss complaints with prejudice on shotgun pleading grounds, provided that the plaintiff has had at least one opportunity to "remedy such deficiencies." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (citation omitted).

In *Weiland*, the Eleventh Circuit identified four categories wherein shotgun pleadings generally fall: (1) where the complaint contains "multiple counts where each count adopts the allegations of all preceding counts"; (2) where the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) where the complaint fails to separate each cause of action or claim for relief into a separate count; and (4) where the complaint asserts multiple claims against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions." 792 F.3d at 1322–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, Plaintiffs' Second Amended Complaint violates Rules 8(a)(2) and 10(b). While Plaintiffs adequately describe the interactions that allegedly occurred between the Fletcher family and the MPD Officers, they interweave their factual

9

allegations with irrelevant information and conclusory statements, and they fail to properly connect their factual allegations to their claims against Defendants. Moreover, the Complaint does not sufficiently separate Plaintiffs' claims into different counts, and it thus lacks short, plain statements showing that Plaintiffs are entitled to relief. Specifically, the Plaintiffs' Second Amended Complaint falls into the last three *Weiland* categories for shotgun pleadings.

### 1. Second *Weiland* Category

The facts section in the Second Amended Complaint is rife with conclusory allegations that are mixed haphazardly with facts which, at a minimum, makes it difficult for the Court to determine what facts support what claims for relief and whether Plaintiffs have stated claims upon which relief can be granted. For instance, in Paragraph 44, Plaintiffs write that the MPD, the Madison County Sheriff's Department ("MCSO"), and the Huntsville Police Department ("HPD") have a "reputation for working together, for harassing people, and for being overly aggressive" without citing any factual bases to support such conclusions. (Doc. 58 at 9.) Of note, the City of Huntsville and the MCSO are non-parties. And yet, Plaintiffs incorporate Paragraph 44 in Counts 4, 5, 6, 9, 19, 20, and 24 while failing to properly connect the statements in the Paragraph to each claim. As a result, those seven counts include information immaterial to the underlying causes of action. In Count 4, for example, Plaintiff Estate brings a 42 U.S.C. § 1983 claim of unlawful

seizure from 4:44 to 4:47 P.M. against Officer 1. Count 4 incorporates the factual allegations related to Officer 1 arriving at Cherelle's vehicle, approaching Fletcher, and eventually grabbing his arm. (Doc. 58 at 7−10.) But Plaintiffs fail to explain how the extraneous references to the HPD and the MCSO connect to the unlawful seizure claim against Officer 1 for his actions during that three-minute period.

Similarly, Paragraph 48 alleges that Officer 1 radioed for backup "to increase the intimidation factor caused by a larger police presence and to apply even more violent and depraved means to coerce the Fletchers' compliance and cooperation." (Doc. 58 at 10.) Beyond the act of calling for backup itself, Plaintiffs do not make any factual allegations that support the conclusion that Officer 1's purpose for radioing for backup was to "increase the intimidation factor" and "apply even more violent and depraved means." Plaintiffs incorporate Paragraph 48 in Counts 7, 8, 10, 13, 14, 15, 16, 17, 19, 20, 21, 22, and 24, while, again, failing to properly connect the Paragraph's allegations to each claim.

For instance, in Count 7, Plaintiffs Cherelle and V.F. bring a § 1983 claim of unlawful seizure at 4:47 PM against Officers 1 and 2. The factual allegations incorporated into Count 7 describe Officer 2 arriving on the scene, Cherelle locking her door, and Officer 2 pointing his firearm at Cherelle and yelling at her to open the door. (Doc. 58 at 11.) Plaintiffs state that Officer 2's "misconduct was carried out at the instigation" of Officer 1. (Doc. 58 at 32.) In other words, Plaintiffs try to frame

their "conclusion" regarding Officer 1's reasons behind calling for backup as the cause of Officer 2's actions at the scene, which is, at best, confusing, and, at worst, misleading for Defendants. As an aside, none of the factual allegations incorporated in Count 7 describe any interaction between Officer 2 and V.F. On the whole, the problems with Count 7 make it difficult, if not impossible, for Defendants to discern what Plaintiffs are claiming and frame a responsive pleading.

Lastly, Plaintiffs devote a chunk of their Second Amended Complaint to what appears to be commentary on the qualified immunity doctrine and altercations between citizens and law enforcement in the general area surrounding Madison, Alabama. Paragraphs 80 to 92 in the facts section further discuss the unrelated entities of the HPD and the MCSO. (Doc. 58 at 15−16.) Plaintiffs attempt to group the MPD, MCSO, and HPD by coining them "the Sister Agencies," claiming that there are personnel, such as Defendant Jernigan, who have worked at more than one entity (albeit, not at the same time) and that the entities train at the same facilities and have the same training curricula. (Doc. 58 at 15). Regardless of whether all that is true, Plaintiffs do not allege that the MPD, HPD, and MCSO operate *interdependently* or *share* leadership. As such, it is vague and potentially deceptive for Plaintiffs to state that the three entities "consider themselves one body in many respects." (Doc. 58 at 16.) Plaintiffs go on to describe alleged uses of excessive force by HPD officers while failing to link their significance to alleged constitutional

12

violations by MPD officers. (Doc. 58 15−16.) But Plaintiffs incorporate these paragraphs into their claims against the City of Madison: Count 18 is a § 1983 municipality claim, and Count 23 is state law municipality claim. (Doc. 58 at 43, 50.) And the issues with Counts 18 and 23 do not end there: the paragraphs incorporated in those Counts do not include *any* factual allegations of the altercation between the Fletcher family and the MPD Officers. As such, the Court cannot determine which facts support Plaintiffs' claims that Defendant City of Madison is liable.

## 2. Third *Weiland* Category

Many of Plaintiffs' counts present more than one discrete claim for relief. In Count 5, for example, Plaintiff Estate brings a § 1983 unlawful seizure claim against Officer 1, claiming that Fletcher's First *and* Fourth Amendment rights were violated. (Doc. 58 at 31.) Plaintiffs repeat this error in several other counts. (Doc. 58 at 25−51.) In thirteen of the twenty-four counts, Plaintiffs bring a single claim against multiple Defendant Officers. In Count 11, for example, Plaintiff Estate brings a § 1983 claim of excessive force against Officers 1, 3, and 4. Plaintiffs describe how Officer 1 tased Fletcher, how Officer 3 punched Fletcher and released the K-9 Officer on Fletcher, and how Officer 4 used lethal force against Fletcher. (Doc. 58 at 36.) Those are three, separate theories upon which a plaintiff may recover for a Fourth Amendment violation—not one.

In Count 18, *all* Plaintiffs bring a § 1983 municipal liability claim against Defendant City of Madison. To establish municipal liability under § 1983, a plaintiff must prove two elements: (1) his constitutional rights were violated; and (2) the municipality had a policy that caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The issue here is with the first element. Over a dozen of Plaintiffs' counts allege that someone's constitutional rights were violated. Plaintiffs thus appear to be bringing multiple theories of § 1983 liability against Defendant City of Madison as a sort of omnibus liability claim. Moreover, Fletcher, Cherelle, and V.F. did not share identical experiences on October 27, 2019, so they cannot lump their claims together as the facts supporting a claim for relief would be individual to each Plaintiff. Thus, because Count 18 brings more than one discrete claim for relief, it is difficult for Defendant City of Madison to discern what Plaintiffs are claiming.

### 3.  Fourth *Weiland* Category

Plaintiffs assert multiple claims against multiple Defendants without adequately specifying which Defendant is responsible for which act. In Count 19, all Plaintiffs bring an outrage/intentional infliction of emotional distress claim under Alabama tort law against Defendant Officers 1 thru 5. Plaintiffs state that the Officers intended to "make Plaintiffs have great fear for their safety and life [sic]." (Doc. 58 at 46.) Plaintiffs then list various actions: "pointing firearms at [Fletcher's

and Cherelle's] heads; physically seizing and dragging [Cherelle] and V.F. out of the vehicle . . . ; releasing an attack dog on [Fletcher] . . . ; Tasing [Fletcher]; punching and beating [Fletcher] and ultimately shooting [Fletcher] unnecessarily." (Doc. 58 at 46.) Rather than differentiate which Defendant Officer is responsible for which act, Plaintiffs instead appear to be imputing the individual Officers' actions on the group, as a whole, which does not adequately give Defendants notice of the claims against them.

### B. Motion for Leave to File Third Amended Complaint

Plaintiffs have already failed to cure the deficiencies in their pleading. Plaintiffs have *twice* amended their Complaint. In its previous Order granting Plaintiffs leave to amend, the Court specifically told Plaintiffs that their First Amended Complaint bared the hallmarks of a shotgun pleading as exemplified in at least the third *Weiland* category. (Doc. 57 at 2.) The Court even ordered Plaintiffs to confer with Defendants' counsel in person before filing the Second Amended Complaint. (Doc. 57 at 3.) Lastly, the Court warned Plaintiffs that they would not have another chance to amend. (Doc. 57 at 2.)

Even if the Court were to grant Plaintiffs leave to amend, an amendment would be futile. Plaintiffs attached their Proposed Third Amended Complaint (Doc. 65−1) to their Motion (Doc. 65). Not only do Plaintiffs fail to correct *any* of the shotgun pleading deficiencies previously discussed, but also the only proposed

change of substance to the pleading is Count 24, which adds a claim against Defendants Finley, Jernigan, and the Councilmembers. (Doc. 65−1 at 52.) However, the proposed change to Count 24 does not give Defendants notice of the claims against them and the grounds upon which those claims rest as the Count fails to reference a statute or law under which Plaintiffs are requesting relief. (Doc. 65−1 at 52.)

Based on the totality of circumstances, this Court finds that granting Plaintiffs a third opportunity to amend their complaint would be futile.

### C. Statutes of Limitations for Plaintiffs' State Law Claims

If federal claims are dismissed before trial, "a district court should typically dismiss the pendant state claims as well." *Vibe*, 878 F.3d at 1296. When a district court dismisses those state law claims, it should do so without prejudice as to refiling in state court. *Id.* It is possible, however, for the court to maintain jurisdiction over those state law claims. *Id.* When considering whether to maintain jurisdiction, whether "a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor" the court should consider. *Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir. 1980) (per curium). However, if a plaintiff filed a defective complaint after the statute of limitations had run on their state law claims, then the plaintiff jeopardized their recovery on those claims, and the court is within its

discretion to dismiss them with prejudice. *See McMahan v. Cleveland Clinic Found. Dept.*, 455 Fed. App'x 874, 877 n.1 (11th Cir. 2011).

In this case, Plaintiffs bring several causes of action under Alabama state law: wrongful death; outrage/intentional infliction of emotional distress; assault and battery; false arrest and false imprisonment; and municipal liability. (Doc. 58 at 45−50.) The statute of limitations for wrongful death is two years. ALA. CODE § 6-5-410 (1975). An action to recover for outrage or intentional infliction of emotional must be filed within two years. *Cont'l Cas. Ins. Co. v. McDonald*, 567 So.2d 1208, 1215 (Ala. 1990) (citing ALA. CODE § 6-2-38 (1975)). If an individual wants to bring a claim for false arrest, false imprisonment, assault, or battery, then the action must be commenced within six years. ALA. CODE § 6-2-34 (1975). Lastly, the statute of limitations for municipal liability for damages growing out of torts is six months. ALA. CODE § 11-4-23 (1975). The altercation between the Fletcher family and the MPD Officers took place on October 27, 2019. (Doc. 58 at 4.) Plaintiffs filed this action on October 26, 2021, within the statute of limitations.[4] (Doc. 1.) Plaintiffs filed their Second Amended Complaint on April 29, 2022, well past when the statutes of limitations would have run for the claims for wrongful death, outrage/intentional infliction of emotional distress, and municipal liability.

---

[4] When Plaintiffs filed their Complaint (Doc. 1), their municipal liability claim under Alabama law was technically time-barred.

17

Plaintiffs' Second Amended Complaint, as the Court previously found, is a shotgun pleading. As such, the Plaintiffs jeopardized their chances for recovery for those causes of action, and the Court will dismiss those claims with prejudice.

## IV. CONCLUSION

Plaintiffs have repeatedly failed to present their claims discretely and succinctly. Because Plaintiffs' Second Amended Complaint is a shotgun pleading, and because granting Plaintiffs a third opportunity to amend would be futile, the Court **GRANTS** Defendants' Motions to Dismiss (Docs. 60 and 62), **DENIES** Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 65), and **DISMISSES** Plaintiffs' claims. The federal claims and those state law claims now barred by statutes of limitations are dismissed **with prejudice**. The rest of the state law claims are dismissed **without prejudice as to refiling in state court**. The Court will enter a final judgment separately.

The Court also notes that just hours prior to the entry of this Order, Cherelle Fletcher filed a letter with the Court, which appears to be a Motion to Dismiss this matter. (Doc. 83.) However, because the document was not filed by Ms. Fletcher's attorney of record, and because it is unclear whether it was filed with her attorney's knowledge, the Court did not consider the letter/Motion in the above analysis.

**DONE** and **ORDERED** February 17, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE